1  SHAPIRO, HABER & URMY LLP
   Thomas G. Shapiro (pro hac vice motion pending)
2  Charles E. Tompkins (pro hac vice motion pending)
   Robert E. Ditzion (pro hac vice motion pending)
3  53 State Street
   Boston, MA 02109
4  Telephone: (617) 439-3939
   Facsimile: (617) 439-0134
5  tshapiro@shulaw.com
   ctompkins@shulaw.com
6  rditzion@shulaw.com

7  RUKIN HYLAND DORIA & TINDALL LLP
   Peter Rukin (SBN 178336)             E-filing
8  100 Pine Street, Suite 725
   San Francisco, CA 94111
9  Telephone: (415) 421-1800
   Facsimile: (415) 421-1700
10 peterrukin@rhdtlaw.com

11 Attorneys for Plaintiff and the proposed Class

12

13            **UNITED STATES DISTRICT COURT**
14           **NORTHERN DISTRICT OF CALIFORNIA**

15 JAMES P. ITO-ADLER, on behalf of      C V  1 0   1 6 8 4
   himself and all others similarly situated,
16                                        **CASE NO.:** _____
           Plaintiff,
17
       vs.
18                                        **CLASS ACTION COMPLAINT**
   HITACHI, LTD., LG ELECTRONICS,
19 INC., HITACHI-LG DATA STORAGE,
   INC., SONY CORPORATION, SONY           **DEMAND FOR JURY TRIAL**
20 NEC OPTIARC, INC., SONY
   OPTIARC, INC., SONY OPTIARC
21 AMERICA, INC., SAMSUNG
   ELECTRONICS COMPANY, LTD.,
22 TOSHIBA CORPORATION, TOSHIBA
   SAMSUNG STORAGE TECHNOLOGY
23 CORPORATION,

24         Defendants.

25

26

27

28

                    CLASS ACTION COMPLAINT

James P. Ito-Adler ("Plaintiff"), on behalf of himself and all others similarly situated, brings this Action against the Defendants named herein for violations of federal and state law relating to the price-fixing of the optical disc drive market. The allegations herein are made on information and belief, except those as to Plaintiff which are made from personal knowledge. In support of his Class Action Complaint, Plaintiff states as follows.

## NATURE OF THE ACTION

1. This Action arises from a conspiracy among Defendants and their co-conspirators which was intended to, and resulted in, the fixing, the maintenance, and the artificial stabilization of the price at which optical disc drives, as well as products containing optical disc drives, were sold in the United States of America. Optical Disc Drives will be described more fully later in this Complaint. The term "Optical Disc Drive Products" as used in this Complaint encompasses Optical Disc Drives and also products containing Optical Disc Drives (computers with DVD drives, for example). Plaintiff brings this Action on behalf of a class (the "Class") which will consist of all persons and other entities who purchased Optical Disc Drive Products indirectly from the named Defendants in the United States of America on any date between approximately November 1, 2005 and the present (the "Class Period"). Defendants' unlawful conduct resulted in Plaintiff and other Class members paying artificially inflated prices for Optical Disc Drive Products during the Class Period.

2. Defendants are among the world's foremost manufacturers of Optical Disc Drives Products, including both stand-alone devices such as home DVD players as well as Optical Disc Drives used in computers and other electronic devices. During the Class Period, Optical Disc Drives were one of the primary means for recording and reading music, movies and other digital data. Over the course of the Class Period, Defendants' sales of Optical Disc Drive Products have yielded billions of dollars in annual revenues and have also expanded exponentially with the increased use of computers by businesses and within households throughout the United States. Today, nearly every computer used or sold in the United States is equipped with an Optical Disc Drive.

-2-

3.     Defendants control the greater part of the Optical Disc Drive industry, which has annual worldwide revenues of billions of dollars. Plaintiff is informed and believes, and thereon alleges, that Defendants' unlawful conduct resulted in Plaintiff and other Class members paying artificially inflated prices for Optical Disc Drive Products during the Class Period. Those prices were greater than the amounts Class members would have paid had a competitive market determined the prices of Optical Disc Drive Products during the Class Period.

4.     Defendants' conduct violated federal antitrust law as well as state law, including the specific state laws set forth herein.

## JURISDICTION AND VENUE

5.     Jurisdiction of this Court is founded on Sections 4 and 16 of the Clayton Act, 15 U.S.C. § 15, 26 for violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, and on 28 U.S.C. §§ 1331, 1337. This Court also has jurisdiction over the state law claims under 28 U.S.C. § 1332 and/or 28 U.S.C. § 1367. In particular, the amount in controversy exceeds $5,000,000, at least one member of the proposed Class is a citizen of a different state from at least one Defendant, and many of the Defendants are citizens of foreign states.

6.     Venue as to Defendants is proper in this district pursuant to 15 U.S.C. §§ 15(a), 22, and 28 U.S.C. § 1391(b), (c), in that more than one Defendant resides in the judicial district, is licensed to do business and/or is doing business in this judicial district. The interstate trade and commerce described herein has been carried out, in part, within this district, and a substantial part of the events giving rise to the claims presented herein took place in this district.

## PARTIES

**Plaintiff**

7.     Plaintiff James P. Ito-Adler is an individual who resides in Belmont, Massachusetts. On or about February 7, 2008, Mr. Ito-Adler purchased a Hewlett-Packard Pavilion dv6000 containing a DVD drive manufactured by Defendant Hitachi-LG Data Storage, Inc. Plaintiff has been financially injured as a result of the conspiracy because the price he paid for this Optical Disc Drive Product was artificially raised by Defendants to anti-competitive levels.

1 **Defendants**

2     8.    Defendant Hitachi, Ltd. ("Hitachi") is a business entity organized under the laws

3 of Japan, with its principal place of business at 6-6, Marunouchi 1-chome, Chiyoda-ku, Tokyo,

4 100-8280, Japan. During the Class Period, Hitachi manufactured, sold and/or distributed Optical

5 Disc Drive Products throughout the United States of America.

6     9.    Defendant LG Electronics, Inc. ("LG") is a business entity organized under the

7 laws of Korea, with its principal place of business at 26/F Twin Towers South, 20 Yoido-Dong,

8 Youngdungpo-Gu, Seoul, SEO 150875, Republic of Korea. During the Class Period, LG

9 manufactured, sold and/or distributed Optical Disc Drive Products throughout the United States

10 of America.

11     10.    Defendant Hitachi-LG Data Storage, Inc. ("HLDTST") is a business entity

12 organized under the laws of Japan with its principal place of business located at 4F MSC Center

13 Bldg., 22-23, Kaigan 3-chrome, Minato-ku, Tokyo, 108-0022, Japan. HLDTST is a joint venture

14 that was formed in November 2000 and began operation in January 2001 and is owned 51% by

15 Defendant Hitachi and 49% by Defendant LG. During the Class Period, HLDTST manufactured,

16 sold and/or distributed Optical Disc Drive Products throughout the United States of America.

17     11.    Defendant Sony Corporation ("Sony") is a business entity organized under the

18 laws of Japan, with its principal place of business located at 1-7-1 Konan, Minato-ku, Tokyo 108-

19 0075, Japan. During the Class Period, Sony manufactured, sold and/or distributed Optical Disc

20 Drive Products throughout the United States of America.

21     12.    Defendant Sony NEC Optiarc, Inc. ("Sony NEC Optiarc") was a Japanese

22 company with its principal place of business located at 4-16-1 Okata, Atsugi-shi, Kanagawa, 243-

23 0021, Japan. Sony NEC Optiarc was created in 2006 as a joint venture between Defendant Sony

24 and NEC Corp. in which Sony Corporation had a 55% interest and NEC Corp. had a 45%

25 interest. Defendant Sony purchased NEC Corp.'s interest in September 2008 and renamed the

26 entity Sony Optiarc, Inc. During the Class Period, Sony NEC Optiarc, Inc. manufactured, sold

and/or distributed Optical Disc Drive Products throughout the United States of America.

27

28

13.     Defendant Sony Optiarc, Inc. ("Sony Optiarc") is the parent corporation of Sony Optiarc America, Inc. and is a business entity organized under the laws of Japan, with its principal place of business located at 4-16-1 Okata, Atsugi-shi, Kanagawa, 243-0021, Japan. As noted above, Sony Optiarc was previously a joint venture between Defendant Sony and NEC Corp., but is now solely controlled by Defendant Sony. During the Class Period, Sony Optiarc manufactured, sold and/or distributed Optical Disc Drive Products throughout the United States of America.

14.     Defendant Sony Optiarc America, Inc., ("Sony Optiarc America"), is a wholly owned subsidiary of Sony Optiarc, which is in turn the wholly owned subsidiary of Defendant Sony. Sony Optiarc America is a Delaware corporation with its principal place of business located at 1730 N. First Street, San Jose, California 95112. During the Class Period, Sony Optiarc America manufactured, sold and/or distributed Optical Disc Drive Products throughout the United States of America.

15.     Defendant Samsung Electronics Company, Ltd. ("Samsung") is a business entity organized under the laws of South Korea, with its principal place of business at Samsung Main Building, 250-2 ga Taepyung-ro Chung-gu, Seoul, Republic of Korea. During the Class Period, Samsung manufactured, sold and/or distributed Optical Disc Drive Products throughout the United States of America.

16.     Defendant Toshiba Corporation ("Toshiba") is a business entity organized under the laws of Japan, with its principal place of business at 1-1, Shibaura 1-Chrome, Minato-Ku, Tokyo 105-8001, Japan. During the Class Period, Toshiba manufactured, sold and/or distributed Optical Disc Drive Products throughout the United States of America.

17.     Defendant Toshiba Samsung Storage Technology Corporation ("TSST") is a business entity organized under the laws of Japan with its principal place of business located at 1-1, Shibaura 1-Chrome, Minato-Ku, Tokyo 105-8001, Japan. TSST is a joint venture formed on April 1, 2004 and owned 51 % by Defendant Toshiba and 49% by Defendant Samsung. During the Class Period, TSST manufactured, sold and/or distributed Optical Disc Drive Products throughout the United States of America.

1    18.    Based on information and belief, there are other partnerships, corporations or other
2    business entities, some of which are currently not known to Plaintiff, who are co-conspirators
3    with Defendants in their illegal restraint of trade, and who have facilitated, abided by, participated
4    in and/or communicated with others about the conspiracy. Plaintiff believes that among these co-
5    conspirators are: Koninklijke Philips Electronics N.V. ("Philips"), Lite-On IT Corporation ("Lite-
6    On"), Philips & Lite-On Digital Solutions Corporation, and Philips & Lite-On Digital Solutions
7    USA, Inc.

8    19.    Defendants either directly committed the conduct alleged herein, or Defendants'
9    officers, agents, employees, representatives, or co-conspirators engaged in, authorized or ordered
10   the actions which comprise the conduct alleged herein during the course of the regular
11   management and operation of Defendants' business or affairs.

12   20.    Each Defendant acted as the principal, agent or joint venturer of, or for, other
13   Defendants or co-conspirators with respect to the acts, violations and common course of conduct
14   alleged by Plaintiff.

15   21.    Whenever this Complaint refers to an act, deed or transaction of a corporation or
16   entity, the Complaint is alleging that the corporation or entity engaged in the act, deed or
17   transaction by or through its officers, directors, agents, employees or representatives while they
18   were actively engaged in the management, direction, control or transaction of the corporation or
19   entity's business or affairs.

20                              **CLASS ACTION ALLEGATIONS**

21   22.    Plaintiff brings this Action both on behalf of himself, and as a Class Action
22   pursuant to the Federal Rules of Civil Procedure, Rule 23(a), (b)(2), and (b)(3), on behalf of the
23   class (the "Class") which is defined as follows: All persons and other entities who purchased
24   Optical Disc Drive Products indirectly from the Defendants or their subsidiaries in the United
25   States of America on any date between November 1, 2005 and the present (the "Class Period").
26   The Class excludes all Defendants along with their parent companies, subsidiaries, affiliates and
27   co-conspirators, all government entities, and any judges or justices assigned to hear any aspect of

28

1  this action. Plaintiff expects that following consolidation of this action with other similarly filed
2  actions, the Class will be further sub-divided into sub-classes by state.

3      23.     Joinder of all members of the Class is not viable due to the great number of
4  persons and individuals who comprise the Class. Plaintiff also believes that, due to the nature of
5  the trade and commerce involved, members of the Class are located throughout the entire
6  geographic United States of America, so joinder of all Class members would again not be viable.
7  Although Plaintiff does not know the exact number of Class members at this time, Plaintiff judges
8  there to be millions of Class members.

9      24.     Plaintiff's claims are typical of other Class members' claims. Plaintiff and the
10  other members of the Class bought Optical Disc Drive Products at prices that were artificially
11  maintained and non-competitive. Defendants and their unnamed co-conspirators established
12  those prices through their actions in connection with the restraint of trade alleged herein. Due to
13  Defendants' conduct in violation of state and federal law as described in this Complaint, Plaintiff
14  and the other members of the Class have all suffered damages because they paid inflated prices
15  for Optical Disc Drive Products.

16      25.     Plaintiff will fairly and adequately protect the interests of the members of the Class
17  and has retained counsel competent and experienced in class action, antitrust and other complex
18  litigation.

19      26.     Final injunctive relief or corresponding declaratory relief with respect to the Class
20  as a whole is appropriate because Defendants have acted or refused to act on grounds generally
21  applicable to the Class.

22      27.     There are common questions of law and fact which exist as to all Class members
23  and which outweigh any questions which only affect individual Class members. Some of the
24  questions of law and fact common to the Class are:

25          (a) Whether Defendants engaged in a contract, conspiracy, or combination among
26              themselves and other co-conspirators to fix, maintain or stabilize the price of
27              Optical Disc Drive Products sold in the United States of America or to restrict
28              output of such products sold in the United States;

-7-

(b) Whether Defendants' conduct caused the prices of Optical Disc Drive Products sold in the United States to be at artificially high and non-competitive levels;

(c) Whether Defendants' conduct caused harm to the members of the Class and, if so, the proper class-wide measure of damages; and

(d) Whether Defendants took measures to conceal the unlawful contract, conspiracy, or combination described herein; and

(e) Whether Plaintiff and the other members of the Class are entitled to, among other things, injunctive relief, and if so, the nature and extent of such injunctive relief.

28.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all Class members is not viable. The prosecution of separate actions by individual members of the Class would impose heavy burdens upon the courts and Defendants and would create a risk of inconsistent or varying adjudications of questions of law and fact common to the Class. A class action would achieve substantial economies of time, effort and expense, and would assure uniformity of decision as to persons similarly situated without sacrificing procedural fairness.

29.     Class certification under Rule 23(b)(3) is appropriate for all of the above reasons. Certification under Rule 23(b)(2) is also appropriate because Defendants acted on grounds generally applicable to Plaintiffs and members of the Class.

30.     Plaintiff reserves the right to expand, modify or alter the Class definition in response to information learned during discovery.

### INTERSTATE TRADE AND COMMERCE

31.     Throughout the Class Period, each Defendant, or one or more of its subsidiaries, sold Optical Disc Drive Products in the United States in a continuous and uninterrupted flow of interstate commerce and foreign commerce, including through and into this judicial district.

32.     Defendants' unlawful activities, which are the subject of this Complaint, were within the flow of interstate trade and commerce, and they have directly and significantly affected

-8-

1  interstate trade and commerce in the United States and caused antitrust injury in the United
2  States.

3      33.    In 2008, Samsung estimated that the Optical Disc Drive market for personal
4  computers is 313 million units per year and the Optical Disc Drive market for all other
5  applications (e.g., game consoles, camcorders, automotive audio and video, personal video
6  recorders, set top boxes, and CD/DVD players and recorders) is 200 million units per year.

7                    **PASS-THROUGH TO INDIRECT PURCHASERS**

8      34.    Defendants' conspiracy to raise, fix, or maintain the prices of Optical Disc Drives
9  resulted in Plaintiffs and members of the indirect purchaser Class paying higher prices for Optical
10 Disc Drive Products. Specifically, Defendants' entire overcharge for Optical Disc Drives was
11 passed on to indirect purchasers by direct-purchasers.

12     35.    Optical Disc Drives are a commodity product with functionally equivalent
13 products available from the Defendants and other manufacturers, who produce them according to
14 standard specifications and sizes.

15     36.    Optical Disc Drives are a distinct, physically-discrete hardware element of Optical
16 Disc Drive Products. They are identifiable and traceable throughout the distribution chain and are
17 not substantially altered as they move through the distribution chain.

18                                 **FACTS**

19 **Optical Disc Drive Technology and Industry Background**

20     37.    Optical discs contain microscopic pits where data is stored. These pits are made
21 from a crystalline metal alloy and are most often pressed into the disc in a spiral arrangement,
22 starting at the center of the disc. Once a disc containing information is inserted into the Optical
23 Disc Drive, the disc spins and a lens inside the device guides a semiconductor laser beam over the
24 disc and a photodiode detects the light reflected from the disc's bumps and pits. The laser scans
25 over the disc's surface, moving outward from the center of the disc. Then the photodiode reads
26 the light's reflection as a binary code (a series of ones and zeros) that the computer translates into
27 usable data. Changes in the intensity of the beams as the lasers hit the pits are detected and
28 translated into electrical signals. The greater the number of pits that can be fit onto the disc, the

1  greater amount of data a disc can store.  The pits are approximately 0.8 micrometers on CDs, 0.4

2  micrometers on DVDs, and 0.15 micrometers on Blu-ray discs.  The Optical Disc Drives must

3  have lasers of different wavelengths in order to read different disc formats.  Blu-ray disc players

4  user a shorter wavelength laser, which is blue-violet, to read discs.  Storage capacity can be

5  increased by adding additional layers to the disc.  Optical Disc Drives can also write and rewrite

6  on the disc, in addition to reading discs, depending on the technology of the drive and

7  accompanying disc.

8      38.    When a recordable disc (*e.g.*, CD-R, DVD-R or BD-R) is inserted into an Optical

9  Disc Drive that has the ability to record data, the Optical Disc Drive's laser is used to selectively

10  heat parts of an organic photosensitive dye layer.  Once exposed to the light of the laser, the

11  reflective properties of the disc's surface change, making the photodiode recognize these changes

12  as bumps and pits and allowing it to read the new information on the disc.

13      39.    There are half-height and slim models of Optical Disc Drives.  Half-height Optical

14  Disc Drives are thicker and typically used in desktop computer towers while slim Optical Disc

15  Drives are thinner and typically incorporated into laptop computers.  As the popularity of laptop

16  computers has increased with consumers, the demand for slim optical drives has become greater

17  and, over the next five years, it is expected to overtake half-height demand.

18      40.    Table A shows an overview of the names, sizes and capabilities of the main

19  available Optical Disc Drive standards.  In spite of the fact that data access speeds and writing

20  speeds vary, all Optical Disc Drives possess the same core technology.  Optical Disc Drives that

21  have been built more recently are "backwards compatible" such that Optical Disc Drives with the

22  latest technology can still read first generation CD-ROMs.  Since 2006, DVD rewritable drives

have been the standard Optical Disc Drives for computers.

23

24

25

26

27

28

-10-

| Table A: Overview of Optical Disc Drive Standards | | |
|---|---|---|
| **Drive Standard** | **Capacity*** | **Capability** |
| **CD-ROM** | **700 MB** | **Read Only** |
| **CD-R** | **700 MB** | **Read, Write** |
| **CD-RW** | **700 MB** | **Read, Write, Rewritable** |
| **DVD-ROM** | **4.7 GB** | **Read Only** |
| **DVD-RAM** | **4.7 GB** | **Read, Write** |
| **DVD-R**** | **4.7 GB** | **Read, Write** |
| **DVD-RW**** | **4.7 GB** | **Read, Write, Rewritable** |
| **BD-ROM** | **25 GB Single Layer;** | **Read Only** |

| | 50 GB Dual Layer | |
|---|---|---|
| BD-R | 25 GB Single Layer;<br><br>50 GB Dual Layer | Read, Write |
| BD-RE | 25 GB Single Layer;<br><br>50 GB Dual Layer | Read, Write, Rewritable |

* Capacities listed are the standard capacities.  The capacity may be greater, depending on the number of layers or if the disc can be read double-sided.

** Other DVD standards, such as DVD+R/RW, exist which include other features or improvements.  *See* http://www.videohelp.com/dvd.

Sources: *See* http://www.videohelp.com/dvd and http://www.blu-ray.com/faq/.

41.     The first Optical Disc Drive was invented jointly by Defendant Sony and Philips with the creation of the audio compact disc (audio "CD").  In 1972, Philips announced a

-12-

technique for storing audio recordings on an optical disc with a small diameter. During the same time period, Sony was exploring optically recording audio on a larger disc but was focusing on developing an error correction technique. In 1978, Sony and Philips agreed on a single format for the disc and the error correction method that would be used. In 1982, the compact disc system was introduced to the public in Japan and Europe. Since the 1980s, several companies have created spin-offs of the CD project by covering specific CD-based applications and extending the previously established standards set by Sony and Philips.

42. CD-ROM drives began to make their way into the computer market once standards were established for creating a CD and an optical device that reads the information on the CD. Since the 1990s, when CD-ROM drives became affordable for the average consumer, Optical Disc Drives have been commonly used in computers. Manufacturers subsequently developed Optical Disc Drives for computers that could read and write DVDs and Blu-Ray discs, which can hold more data than a CD-ROM.

43. At present, Optical Disc Drives are a standard component on nearly every computer used in the United States. Due to the increasing popularity of personal computers, Defendants ship hundreds of millions of Optical Disc Drives and Optical Disc Drive Products each year, generating billions of dollars in annual revenues. According to an IDC analysis, between 2004 and 2008, worldwide Optical Disc Drive shipments generated over $45 billion in revenues. Digitimes Research estimates that worldwide Optical Disc Drive shipments increased at an annual rate of approximately 10% since at least 2002, and by 2007 they exceeded 300 million.

## Characteristics of the Optical Disc Drive Products Industry Fostered a Favorable Environment for Collusion

44. The Optical Disc Drive Products industry has several characteristics that facilitate a conspiracy, including market concentration, ease of information sharing, multiple interrelated business relationships, significant barriers to entry, and homogeneity/standardization of products.

### A. Market Concentration

45. The Optical Disc Drive market is oligopolistic and dominated by a small group of manufacturers, so it is particularly favorable for the collusive conduct that this Complaint alleges.

-13-

1  During the Class Period, Defendant HLDTST (a joint venture of Defendants LG and Hitachi)

2  controlled about 25% to 30% of the overall annual market share of shipments. During the same

3  time Defendant TSST (a joint venture of Defendants Toshiba and Samsung) controlled over 20%

4  of the market share, and Defendant Sony Optiarc controlled at least 17% of the market share.

5  Thus, the Defendants controlled approximately two thirds of the overall market for Optical Disc

6  Drives and were able fix the prices of Optical Disc Drive Products.

7  **B. Joint Ventures and Coordinated Business Activities**

8      46.    Defendants were also involved and relied upon joint ventures and long- standing

9  business relationships within the Optical Disc Drive market which allowed them continuous

10  opportunities to discuss pricing, capacity utilization and other important prospective market

11  information. The joint venture between Defendants Hitachi and LG which established HLDTST

12  in November of 2000 was the first of these joint ventures. HLDTST began operation in January

13  of 2001. Defendants Toshiba and Samsung consolidated their optical disc drive divisions to form

14  TSST in April 2004. Then, in 2006, Defendant Sony NEC Optiarc, was created as a joint venture

15  between Defendant Sony and NEC Corp.

16      47.    The formation of these joint ventures was the result of the exchange of information

17  and constitutes evidence of an ongoing antitrust conspiracy between Defendants. Furthermore,

18  because the nature of the business relations between certain Defendants was mutually beneficial,

19  Defendants not only had the opportunity to conspire but also the financial incentive to do so.

20  When announcing the formation of Sony NEC Optiarc, a spokesman for Sony explained that the

21  joint venture came into existence because: "There was a feeling that those two complementary

22  strengths [Sony and NEC Corp.] would make more sense in a joint venture than competing

23  against each other."

24      **C. Barriers to Entry Into the Optical Disc Drive Industry**

25      48.    Significant manufacturing and technological barriers make entry into the Optical

26  Disc Drive industry difficult. In order to compete in the Optical Disc Drive industry, companies

27  need to spend hundreds of millions of dollars on research and development, licensing and

28  manufacturing of products. Additionally, Defendants have been allowed to dictate who enters the

-14-

1  market and at what cost due to the ownership and control that they have exerted over Optical Disc

2  Drive technology.  Because of these barriers to entry, smaller manufacturers of Optical Disc

3  Drives have found it difficult to compete with Defendants and to overcome the effects of

4  economies of scale.  Accordingly, the financial structure of the Optical Disc Drive industry

5  allowed Defendants to implement their antitrust conspiracy by eliminating competition and

6  artificially stabilizing the prices of Optical Disc Drive Products without losing market share.

7  **D. Trade and Business Organizations**

8  49.  During the Class Period, Defendants belonged to trade and business organizations

9  focusing on Optical Disc Drive Products and related industries, such as the Optical Storage

10  Technology Association ("OSTA"), the DVD Forum, the International Symposium of Optical

11  Memory ("ISOM"), the Institute of Electrical and Electronics Engineers Photonics Society

12  ("IEEE Photonics Society") and the DVD6C Licensing Group ("DVD6C").  The DVD Forum is

13  an international organization responsible for the licensing and distribution of DVD products

14  whose "purpose is to exchange and disseminate ideas and information about the DVD Format and

15  its technical capabilities, improvements and innovations," and its Steering Committee includes

16  Defendants Hitachi, LG Electronics, Samsung, Sony and Toshiba.  The members of OSTA

17  include LG Electronics and Sony, and according to its website, OSTA was:

18  incorporated as an international trade association in 1992 to promote the use of

19  recordable optical technologies and products.  The organization's membership

20  includes optical product manufacturers and resellers from three continents,

21  representing more than 85 percent of worldwide writable optical product

22  shipments.

23  They work to shape the future of the industry through regular meetings of

24  Commercial Optical Storage Applications (COSA), DVD Compatibility,

25  Marketing, MPV (MusicPhotoVideo), UDF committees, and a new adhoc [sic]

26  Blue Laser committee.

27  The DVD6C, of which Defendants Hitachi, Samsung and Toshiba are members, is described on

28  its website as "Nine leading developers of DVD technology and formats have formed DVD5C

-15-

1  Licensing Group offering one-stop shopping benefit for all potential licensees."

2      50.    These organizations held multiple meetings and conferences which were attended
3  by Defendants and their employees during the Class Period, and these meetings and conferences
4  provided Defendants with the opportunity to meet, discuss and agree upon their pricing of Optical
5  Disc Drive Products.  For example, a description of a meeting held by the IEEE Photonics
6  Society in May 2009, which had members of the Program Committee and Advisory Committee
7  from Defendants LG, Toshiba, Samsung, Hitachi and Sony, was described on the IEEE website
8  as "an excellent forum for exchanging information on the status, advances and future directions in
9  the field of optical data storage."

10     **E. Standardization of Optical Disc Drive Products**

11     51.    Since its inception during the 1970s, the Optical Disc Drive industry has been
12  characterized by the standardization of discs (e.g., CD-ROMs, DVD-ROMs) and Optical Disc
13  Drive Products driven by industry participants and a range of industry-related organizations like
14  the International Standardization Organization ("ISO"), International Electrotechnical
15  Commission ("IEC") and ECMA International.  These organizations and their members are
16  dedicated to standardizing the use of information communication technology and consumer
17  electronics.

18     52.    The Optical Disc Drive industry is also subject to patents and intellectual property
19  rights which require adoption of standardized product specifications.  Philips, which is
20  responsible for the development of CD technology and continues to hold patents and licensing
21  rights relating to that technology, has stated the following:

22         Standardization offers many other advantages to industry as a whole.  For
23         example:  [1] Improvements to performance, compatibility, reliability, safety and
           interoperability;  [2] Economies of scale and lower costs – for example, by
24         allowing manufacturers to address multiple regions with a single product or
25         manufacturing line; and [3] Cooperation between industry leaders, reducing the
26         risk for 'first-mover' companies which pioneer new products or technologies.

27

28
                                      -16-

1    53.    The standardization of the Optical Disc Drive industry gave Defendants the

2    mechanism to implement, enforce and oversee their anticompetitive conspiracy to fix the price of

3    Optical Disc Drive Products.  Moreover, the result of this standardization is that Optical Disc

4    Drives are commodity products, which buyers decide to purchase primarily, if not exclusively,

5    based on price.

6    **Defendants' Illegal Price Fixing Conduct**

7    54.    Plaintiff is informed and believes, and thereon alleges, that, faced with decreasing

8    profits from Optical Disc Drives, Defendants entered into a conspiracy which had the intent and

9    result of fixing, raising, maintaining and stabilizing artificially inflated price levels for Optical

10   Disc Drive Products in the United States in order to preserve and increase their revenues.

11                                    **GOVERNMENT INVESTIGATIONS**

12   55.    Plaintiff is informed and believes, and thereon alleges, that Defendants are

13   currently under investigation by the Department of Justice for anticompetitive conduct in

14   connection with the Optical Disc Drive industry.  Plaintiff is further informed and believes, and

15   thereon alleges, that the United States' criminal investigation of the Optical Disc Drive

16   conspiracy is being conducted by the Department of Justice's Antitrust Division in the Northern

17   District of California.

18   56.    On October 23, 2009, in a Form 6-K that it filed with the SEC, Defendant Sony

19   disclosed the following:

20       Sony Corporation said today that its U.S. subsidiary, Sony Optiarc America Inc.,

21       has received a subpoena from the U.S. Department of Justice (DOJ) Antitrust

22       Division seeking information about its optical disc drive business. Sony

23       understands that the DOJ and agencies outside the United States are investigating

24       competition in optical disc drives. Sony intends to cooperate fully with the DOJ

         and other agencies in this inquiry.

25

26   57.    On October 26, 2009, news sources reported that other companies, including

27   Defendants Toshiba, Hitachi, Samsung and LG, had received subpoenas from the DOJ.  One

28

                                            -17-

1    article states that "[a]ccording to a person familiar with the investigation, the Justice Department

2    started a criminal antitrust probe into the market for optical disc drives in recent months,

3    investigating disc-drive makers for possible price-fixing, bid-rigging and allocation of markets."

4    News reports indicated that European Union and Singaporean antitrust authorities were

5    conducting similar investigations.

6          58.     On October 27, 2009, Defendants Toshiba and Hitachi confirmed that, like

7    Defendant Sony, their Optical Disc Drive operations in the United States had received subpoenas

8    from the DOJ in an increasingly large U.S. Department of Justice investigation into potential

9    criminal antitrust violations involving possible price-fixing, bid-rigging and allocation of markets

10    regarding Optical Disc Drives.

11         59.     On October 27, 2009, Gina Talamona, a spokeswoman for the DOJ, confirmed

12    that, "[t]he antitrust division is investigating the possibility of anticompetitive practices in the

13    optical disc drive industry."

14         60.     It is significant that the Defendants' anticompetitive behavior has been the subject

15    of a criminal grand jury investigation by the DOJ. In order for the DOJ to institute a grand jury

16    investigation, a DOJ Antitrust Division attorney must believe that a crime has been committed

17    and prepare a detailed memorandum to that effect. *See* Antitrust Grand Jury Practice Manual,

18    Vol. 1, Ch. I.B.1 ("[i]f a Division attorney believes that a criminal violation of the antitrust laws

19    has occurred, he should prepare a memorandum requesting authority to conduct a grand jury

20    investigation.") Furthermore, following a review of the memorandum, the request for a grand

21    jury must be approved by the Assistant Attorney General for the Antitrust Division, based on the

22    standard that a criminal violation may have occurred. *See id.* It is also significant that the DOJ

23    Antitrust Division investigation is criminal, as opposed to civil. The Antitrust Division's

24    "Standards for Determining Whether to Proceed by Civil or Criminal Investigation" state: "[i]n

25    general, current Division policy is to proceed by criminal investigation and prosecution in cases

26    involving horizontal, per se unlawful agreements such as price fixing, bid rigging and horizontal

27    customer and territorial allocations."     *See* Antitrust Division Manual, Chapter III.C.5.

28

-18-

1    Accordingly, the existence of a criminal investigation into the Optical Disc Drive industry

2    supports the existence of the conspiracy alleged herein.

3    ## HISTORY OF COLLUSION

4    61.    Many Defendants named in this Complaint have a long history of collusion and are

5    either presently involved in worldwide investigations into other technology-related products, or

6    have admitted to participating in cartels involving technology-related products.

7    62.    An example of this is that several of the Defendants named herein have been

8    implicated in a worldwide price-fixing conspiracy for thin film transistor liquid crystal displays

9    ("TFT-LCD"). On December 15, 2008, a subsidiary of Defendant LG pled guilty to participating

10   in a conspiracy involving TFT-LCD and agreed to pay a $400 million fine. On May 22, 2009, a

11   subsidiary of Defendant Hitachi pled guilty to participating in a conspiracy involving TFT-LCD

12   and agreed to pay a $31 million fine. Although it has not been publicly acknowledged by

13   Defendant Samsung, it is widely believed that Samsung is in the U.S. DOJ leniency program with

14   respect to the DOJ's investigation into the market for TFT-LCD, meaning that it has admitted its

15   participation level in the cartel. The TFT-LCD investigation is ongoing, and Defendant Toshiba,

16   as well as other entities, remains under investigation. Such criminal investigation is being

17   conducted by the San Francisco office of the DOJ's Antitrust Division. The Acting Assistant

18   Attorney General in charge of the Antitrust Division said, regarding this investigation, "Hitachi

19   joins three other multinational companies who have admitted to their involvement in fixing prices

20   for LCD panels sold to U.S. companies and that have already paid criminal fines totaling more

21   than $585 million. This case should send a strong message to multinational companies operating

22   in the United States that when it comes to enforcing the U.S. antitrust laws we mean business."

23   63.    Additionally, in 2005 Defendant Samsung agreed to plead guilty to participating in

24   a price-fixing conspiracy involving dynamic random access memory ("DRAM"). Samsung

25   agreed to pay a fine of $300 million as part of its guilty plea.

26   64.    Defendants LG, Hitachi, Toshiba, and Samsung have been under investigation in

27   the European Union ("EU") as well for colluding to fix prices on TFT-LCDs sold in Europe. In

28   November 2007, the EU fined, *inter alia*, Defendant Sony and various related entities and the

-19-

1    Hitachi Maxell Limited joint venture \$110 million for fixing the prices of professional videotapes

2    sold in Europe between 1999 and 2002. Under similar circumstances, Defendants Hitachi and

3    Toshiba were fined by the European Commission for their parts in a conspiracy to control prices

4    and allocate market shares in the market for gas-insulated switchgear between 1988 and 2004.

## ALLEGATION OF ANTITRUST
## INJURY TO PLAINTIFF AND THE CLASS

65.     Defendants entered into a continuing contract, conspiracy or combination to unreasonably restrain trade and commerce and fix prices in violation of state and federal law. Among the activities engaged in by Defendants are the following:

(a) Taking part in meetings and conversations to discuss the price and supply of Optical Disc Drive Products sold in the United States of America;

(b) Communicating in writing and orally to fix prices of Optical Disc Drive Products;

(c) Agreeing during those meetings and conversations to manipulate supply and charge prices at specific levels and to otherwise fix, increase, stabilize and/or maintain prices of Optical Disc Drive Products sold in the United States of America in a manner that deprived direct purchasers of free and open competition;

(d) Issuing price announcements and price quotations in accordance with the agreements reached;

(e) Selling Optical Disc Drive Products at the agreed-upon, non-competitive prices;

(f) Selling Optical Disc Drive Products to various customers throughout the United States of America at artificially inflated prices; and

(g) Providing false statements to the public to explain increased prices for Optical Disc Drive Products.

66.     The conspiracy that this Complaint alleges has and continues to have many significant effects, some of which are as follows:

-20-

(a) Plaintiff and the Class have been charged prices that have been raised, fixed, maintained or stabilized at artificially inflated, non-competitive levels;

(b) The benefits of free, open and unrestricted competition in the market for Optical Disc Drive Products have not been provided to Plaintiff and the Class; and

(c) The competition in establishing the prices paid in the United States of America and abroad has been unlawfully restrained, suppressed and removed.

67. Plaintiff and Class members have been harmed by reason of the violations of state and federal law. The harm suffered by Plaintiff and the Class as a direct result of Defendants' conduct is that Plaintiff and the Class paid supracompetitive prices for Optical Disc Drive Products.

## FRAUDULENT CONCEALMENT

68. The existence of the conspiracy alleged in this Complaint was not discovered by Plaintiff and members of the Class, and could not have been discovered through the exercise of reasonable diligence, until October 26, 2009 when the first public reports were released indicating that manufacturers of Optical Disc Drives were being investigated by antitrust authorities in the United States of America and abroad for conspiring to fix prices of Optical Disc Drives.

69. Plaintiffs and members of the Class were unaware, prior to October 26, 2009, that Defendants were conducting themselves unlawfully, as alleged in this Complaint, and Plaintiffs and members of the Class were also unaware before October 26, 2009 that they were paying artificially high prices for Optical Disc Drive Products throughout the United States of America during the Class Period.

70. Defendants wrongfully concealed the affirmative acts alleged herein, including acts to further the conspiracy, and they carried out those acts in a manner that precluded detection.

71. Defendants and their co-conspirators engaged in a successful price-fixing conspiracy concerning Optical Disc Drive Products, which they affirmatively concealed, at least in the following respects:

-21-

(a) By meeting face-to-face secretly to discuss prices, customers and markets of Optical Disc Drive Products sold in the United States of America and elsewhere;

(b) By using certain methods of communication to evade detection, such as telephonic conversations to discuss prices, customers and markets of Optical Disc Drive Products sold in the United States and elsewhere;

(c) By agreeing among themselves at meetings and in communications not to discuss publicly, or otherwise reveal, the nature and substance of the acts and communications in furtherance of their illegal scheme;

(d) By intentionally creating the false appearance of competition; and

(e) By giving customers and the public pretextual reasons for pricing changes in Optical Disc Drive Products which were materially false and misleading and made for the purpose of concealing Defendants' anti-competitive scheme as alleged herein.

72. As a result of Defendants' fraudulent concealment of their conspiracy, the running of any statute of limitations has been tolled with respect to any claims that Plaintiff and members of the Class have as a result of the anticompetitive and unfair and deceptive conduct alleged in this Complaint.

## COUNT I

### Injunctive Relief For Violation Of The Sherman Antitrust Act

73. Plaintiff incorporates by reference the allegations in the above paragraphs as if fully set forth herein.

74. Beginning at least as early as November 1, 2005, the exact date being unknown to Plaintiff and exclusively within the knowledge of Defendants, and continuing through the present, Defendants and their co-conspirators entered into and engaged in a contract, combination or conspiracy in unreasonable restraint of trade in violation of Section 1 of the Sherman Act by artificially reducing or eliminating competition for Optical Disc Drive Products in the United States of America.

-22-

75.     The contract, combination or conspiracy has resulted in an agreement, understanding or concerted action between and among Defendants and their co-conspirators in furtherance of which Defendants instituted, fixed, maintained, raised or stabilized prices for Optical Disc Drive Products. Such contract, combination, or conspiracy violated Section 1 of the Sherman Act, 15 U.S.C. § 1.

76.     Defendants' contract, combination, agreement, understanding or concerted action occurred in or affected interstate and international commerce. Defendants' unlawful conduct was through mutual understandings or agreements by, between and among Defendants.

77.     In entering into and conducting the conspiracy as agreed, Defendants and their co-conspirators committed the acts they agreed to commit, including those specifically set forth herein and additional acts and conduct in furtherance of the conspiracy, with the specific intent of:

(a) allocating amongst themselves the production and markets for Optical Disc Drive Products;

(b) submitting rigged bids in order to secure and carry out certain Optical Disc Drive Product contracts; and

(c) raising, fixing, and maintaining the price of Optical Disc Drive Products.

78.     The contract, combination or conspiracy has had the following effects:

(a) Prices charged to Plaintiff and the Class for Optical Disc Drive Products were raised, fixed, maintained or stabilized at higher, artificially inflated, non-competitive levels;

(b) Plaintiff and the Class have been deprived of the benefits of free, open and unrestricted competition in the market for Optical Disc Drive Products; and

(c) Competition in establishing the prices paid for Optical Disc Drive Products has been unlawfully restrained, suppressed and eliminated.

79.     Plaintiff and the members of the Class have been injured in their business and/or property and will continue to be injured by paying more for Optical Disc Drive Products

-23-

1   purchased indirectly from Defendants and their co-conspirators than they would have paid and

2   will pay in the absence of the conspiracy described herein.

3       80.     Plaintiff and the Class are entitled to an injunction against Defendants, preventing

4   and restraining the violations alleged herein.

5                                   **COUNT II**

6                   **Violation Of Massachusetts G. L. c. 93A §2 et seq.**

7       81.     Plaintiff incorporates by reference the allegations in the above paragraphs as if

8   fully set forth herein.

9       82.     Defendants' intentional and purposeful anticompetitive acts that are described

10  above, including but not limited to acts of collusion to set prices and the actual act of price-fixing

11  itself, were intended to and did in fact cause Plaintiff and members of the Class to pay

12  supracompetitive prices for Optical Disc Drive Products purchased in the Commonwealth of

13  Massachusetts.

14      83.     Beginning at least as early as November 1, 2005, the exact date being unknown to

15  Plaintiff and exclusively within the knowledge of Defendants, and continuing through the present,

16  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in

17  violation of 93A § 2.

18      84.     The violations of 93A by Defendants were done willfully, knowingly, and in bad

19  faith.

20      85.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and

21  members of the Class have been injured in their businesses and property in that they paid more

22  for Optical Disc Drive Products than they otherwise would have paid in the absence of

23  Defendants' unlawful conduct.

24      86.     Demand has been made upon Defendants pursuant to 93A, §§ 2, 9 more than 30

25  days prior to filing this claim for relief under 93A.

26      87.     As a result of Defendants' and their co-conspirators' violation of 93A, Defendants

27  are liable to Plaintiff and the Class for up to three times the damages that Plaintiff and the Class

28

-24-

incurred, or at the very least the statutory minimum award of $25 per Optical Disc Drive Product purchase, together with all related court costs and attorneys' fees.

## COUNT III

### Violation Of State Antitrust And Unfair Competition Law

88.     Plaintiff incorporates by reference the allegations in the above paragraphs as if fully set forth herein.

89.     As described above, beginning at least as early as November 1, 2005, the exact date being unknown to Plaintiff and exclusively within the knowledge of Defendants, and continuing through the present, Defendants entered into a contract, combination or conspiracy to fix, raise, maintain or stabilize the price of Optical Disc Drive Products in violation of various state laws.

90.     As a result of Defendants' illegal conduct, Plaintiff and members of the Class were compelled to pay, and did pay, more than they would have paid in the absence of a conspiracy.

91.     By reason of the foregoing, Defendants have engaged in conduct in violation of the common law and the following specific state laws:

(a) Ala. Code §§8-10-1, et seq.;

(b) Ariz. Revised Stat. §§44-1401, et seq.;

(c) Cal. Bus. & Prof. Code §§16700, et seq.;

(d) D.C. Code §§28-4503, et seq.;

(e) Fla. Stat. §§542.15, et seq.;

(f) Haw. Rev. Stat. §§480-1, et seq.;

(g) 740 Ill. Comp. Stat. §§10/1, et seq.;

(h) Iowa Code § 553.1, et seq.;

(i) Kan. Stat. §§50-101, et seq.;

(j) La. Rev. Stat. §§51:121, et seq.;

(k) Me. Rev. Stat. tit. 10 §1101, et seq.;

(l) Mich. Comp. Laws §§445.771, et seq.;

(m)Minn. Stat. §§325D.52, et seq.;

-25-

1             (n) Miss. Code §§75-21-1, et seq.;

2             (o) Neb. Rev. Stat. §§59-801, et seq.;

3             (p) Nev. Rev. Stat. §§598A, et seq.;

4             (q) N.M. Stat. §§57-1-1, et seq.;

5             (r) N.C. Gen. Stat. §§75-1, et seq.;

6             (s) N.D. Cent. Code §§51-08.1-01, et seq.;

7             (t) R.I. Gen. Laws §§6-36-1, et seq.;

8             (u) S.D. Codified Laws §§37-1, et seq.;

9             (v) Tenn. Code §§47-25-101, et seq.;

10            (w) Utah Code §§76-10-911, et seq.;

11            (x) Vt. Stat. tit. 9, §§2451, et seq.;

12            (y) W.Va. Code §§47-18-1, et seq.; and

13            (z) Wis. Stat §§133.01, et seq.

14      92.     Plaintiff and members of the Class have been injured in their business or property by reason of Defendants' violations alleged in this Count. Their injury consists of paying higher prices for Optical Disc Drive Products than they would have paid in the absence of those violations.

      93.     The injury to Plaintiff and members of the Class is the type of injury that the above state antitrust laws were designed to prevent, and the injury flows from Defendants' unlawful conduct.

      94.     Plaintiff and members of the Class seek actual, statutory, and multiple damages as well as costs and attorneys' fees as permitted by law for their injuries by Defendants' violations of the aforementioned statutes.

## COUNT IV

### Violation Of State Consumer Protection And Unfair Competition Law

      95.     Plaintiff incorporates by reference the allegations in the above paragraphs as if fully set forth herein.

96. As described above, beginning at least as early as November 1, 2005, the exact date being unknown to Plaintiff and exclusively within the knowledge of Defendants, and continuing through the present, Defendant engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection statutes by conspiring to defraud consumers or businesses.

97. By reason of the foregoing, Defendants have engaged in conduct in violation of the following specific state laws:

(a) Alaska Stat. §§45.50.471, et seq.;

(b) Ariz. Rev. Stat. §§44-1521, et seq.;

(c) Ark. Code §§4-88-101, et seq.;

(d) Cal. Bus. & Prof. Code §§17200, et seq.;

(e) Colo. Rev. Stat §§6-1-101, et seq.;

(f) Conn. Gen. Stat. §§42-110a, et seq.;

(g) Del. Code tit. 6, §§2511, et seq.;

(h) D.C. Code §§28-3901, et seq.;

(i) Fla. Stat. §§501.201, et seq.;

(j) Ga. Code. §10-1-390, et seq.;

(k) Idaho Code §§48-601, et seq.;

(l) 815 Ill. Comp. Stat. §§ 505/1, et seq.;

(m) Kan. Stat. §§50-623, et seq.;

(n) Ky. Rev. Stat. §§367.110, et seq.;

(o) La. Rev. Stat. §§51:1401, et seq.;

(p) Me. Rev. Stat. tit. 5, §§207, et seq.;

(q) Md. Com. Law Code §§13-101, et seq.;

(r) Mich. Comp. Laws §§445.901, et seq.;

(s) Minn. Stat. §§8.31, et seq.;

(t) Mo. Rev. Stat. §§407.010, et seq.

(u) Mont. Cod §§30-14-101, et seq.;

-27-

1     (v) Neb. Rev. Stat. §§59-1601, et seq.;

2     (w) Nev. Rev. Stat. §§598.0903, et seq.;

3     (x) N.H. Rev. Stat. §§358-A:1, et seq.;

4     (y) N.M. Stat. §§ 57-12-1, et seq.;

5     (z) N.Y. Gen. Bus. Law. §§ 349, et seq.;

6     (aa) N.C. Gen. Stat. §§75-1.1, et seq.;

7     (bb) N.D. Cent. Code §§51-15-01, et seq.;

8     (cc) Ohio Rev. Code §§1345.01, et seq.;

9     (dd) Okla. Stat. tit. 15, §§751, et seq.;

10     (ee) Or. Rev. Stat. §§646.605, et seq.;

11     (ff) Pa. Stat., tit. 73, §§201-1, et seq.;

12     (gg) R.I. Gen. Laws §§6-13.1-1, et seq.;

13     (hh) S.C. Code §§ 13-11-1, et seq.;

14     (ii) S.D. Code Laws §§37-24-1, et seq.;

15     (jj) Tenn. Code §§47-18-101, et seq.;

16     (kk) Tex. Bus. & Com. Code §§17.41, et seq.

17     (ll) Utah Code §§13-11-1, et seq.;

18     (mm) Va. Code §§59.1-196, et seq.;

19     (nn) Wash. Rev. Code §§19.86.010, et seq.;

20     (oo) W.Va. Code §§46A-6-101, et seq.;

21     (pp) Wyo. Stat. §§40-12-105, et seq.;

22  98.  Plaintiff and members of the Class have been injured in their business or property by reason of Defendants' violations alleged in this Count. Their injury consists of paying higher prices for Optical Disc Drive Products than they would have paid in the absence of those violations.

99.  The injury to Plaintiff and members of the Class is the type of injury that the above state consumer protection and unfair competition laws were designed to prevent, and the injury flows from Defendants' unlawful conduct.

-28-

100.    Plaintiff and members of the Class seek actual, statutory, and multiple damages as well as costs and attorneys' fees as permitted by law for their injuries by Defendants' violations of the aforementioned statutes.

## COUNT V

### Unjust Enrichment And Disgorgement Of Profits

101.    Plaintiff incorporates by reference the allegations in the above paragraphs as if fully set forth herein.

102.    As a result of the above conduct, Defendants have been unjustly enriched through overpayments by Plaintiff and other Class members for Optical Disc Drive Products.

103.    It would be unjust for Defendants to retain the benefits that they have received from these overpayments.

104.    Defendants should thus disgorge all profits resulting from such overpayments, to be paid into a constructive trust from which Plaintiff and members of the Class may receive restitution.

## DAMAGES

105.    During the Class Period, Plaintiff and the other members of the Class purchased Optical Disc Drive Products directly from Defendants, or their subsidiaries, agents and/or affiliates, and, by reason of the conduct alleged herein, paid more for such products than they would have paid in the absence of such antitrust violations. As a result, Plaintiff and the other members of the Class have sustained damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays that the Court enter judgment on his behalf and on behalf of the Class herein, adjudging and decreeing as follows:

> (1) That this action may proceed as a class action, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3) with Plaintiff as the designated Class Representative and his counsel as Class Counsel;
>
> (2) That Defendants, their subsidiaries, affiliates, successors, transferees, assignees and the respective officers, directors, partners, agents and

-29-

employees thereof and all other persons acting or claiming to act on their behalf be permanently enjoined and restrained from continuing and maintaining the combination, conspiracy or agreement alleged herein or from engaging in any other conduct having a similar purpose or effect;

(3) That Defendants have:

    (i) Engaged in a contract, combination and conspiracy in violation of Section 1 of the Sherman Act (15 U.S.C. § 1), and that Plaintiff and the Class have been injured in their businesses and property as a result of Defendants' violation;

    (ii) Violated Mass. Gen. L. C. 93A;

    (iii)Violated the state antitrust, consumer protection, and unfair competition laws set forth herein; and

    (iv)Been unjustly enriched by the conduct alleged herein.

(4) That Plaintiff and the members of the Class recover damages sustained by them and/or statutory damages, as provided by state and federal law, and that a judgment be entered in favor of Plaintiff and the Class jointly and severally against the Defendants in an amount to be trebled as permitted;

(5) That Plaintiff and the members of the Class be awarded pre-judgment and post-judgment interest, and that such interest be awarded at the highest legal rate provided by law;

(6) That Plaintiff and the members of the class recover their costs of this suit, including reasonable attorneys' fees as provided by law; and

(7) That Plaintiff and the members of the Class receive such other or further relief as may be just and proper.

-30-

1  **DEMAND FOR JURY TRIAL**

2  Plaintiff demands a trial by jury of all of the claims asserted in this Complaint so triable.

3

4

5  DATED: April 20, 2010          Respectfully Submitted,

6

7                                **RUKIN HYLAND DORIA & TINDALL LLP**

8
                                 By: _____
9                                        Peter Rukin

10

11
                                 **SHAPIRO HABER & URMY LLP**
12
                                 By:  /s/ Thomas G. Shapiro
13                                      THOMAS G. SHAPIRO

14

15
                                 Attorneys for Plaintiff and the proposed Class
16

17

18

19

20

21

22

23

24

25

26

27

28

-31-